JAMES H. HOAG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoag v. Commissioner
Docket No. 24235-91
United States Tax Court
T.C. Memo 1993-348; 1993 Tax Ct. Memo LEXIS 350; 66 T.C.M. (CCH) 326; August 9, 1993, Filed *350 Decision will be entered pursuant to Rule 155. James H. Hoag, pro se. For respondent: Thomas Eagan. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficiency in joint income tax for 1988 for petitioner and Amy P. Hoag in the amount of $ 4,955. During 1988 petitioner was married to Amy P. Hoag. Amy P. Hoag has not filed a petition to this Court. After concessions, the issues before the Court are whether petitioner and Amy P. Hoag are entitled to deductions for travel away from home on business in amounts greater than that allowed by respondent, and whether petitioner was engaged in farming activities with a profit objective. The parties have entered into a Stipulation of Facts, a Supplemental Stipulation of Facts, *351 as well as a Stipulation of Agreed Adjustments. The stipulated facts are so found. Petitioner was a resident of Truth or Consequences, New Mexico, when he timely filed his petition herein. Travel away from home. During 1988 petitioner and Amy P. Hoag resided at Seguin, Texas. Amy P. Hoag owned real property located at Grand Prairie, Texas, from which she received rental income. During 1988, Amy P. Hoag made four trips from Seguin to Grand Prairie in connection with the rental real property. She was away from home during these trips for a total of 9 days. She claimed per diem expenses of $ 105 per day for each of the 9 days she was away from home in this connection. During 1988, the per diem rate for Federal employees on travel status in Grand Prairie, Texas, was $ 105 per day. There is no evidence in the record to substantiate the actual travel expenses incurred by Amy P. Hoag during these trips. Respondent, following Rev. Proc. 83-71, 1983-2 C.B. 590, allowed a deduction for travel expenses at the rate of $ 14 per day. Petitioner, an engineer, during 1988 worked on certain military contracts as a temporary employee of Aero *352 Tek, Inc. of Baltimore, Maryland, and M & S Services of Jenkintown, Pennsylvania. During the year, he made three trips from Seguin, Texas, to Lynn, Massachusetts, in connection with such employment, each of more than 30 days duration. He was away from home for a total of 169 days in connection with his employment by Aero Tek, Inc. and M & S Services, during which he worked a total of 1,776 hours. He was reimbursed a total of $ 200 for such travel expenses. Petitioner claimed per diem expenses of $ 16,610 in connection with the three trips he made to Lynn, Massachusetts, based on $ 110 per day for 151 days. He did not claim per diem for days not worked. During 1988, the per diem rate for employees of the Federal Government on travel status in Lynn, Massachusetts, was $ 114 per day. Respondent allowed petitioner a deduction of $ 9 per day for meal expenses for 169 days as provided by Rev. Proc. 83-71, 1983-2 C.B. 590. Petitioner did not present any evidence, at trial or otherwise, regarding his actual expenses during his business trips to Lynn. Petitioner claimed a mileage allowance for the three trips to Lynn in the amount of $ 1,671. *353 Respondent has agreed that the correct mileage allowance should be $ 2,862. Section 274(d), as applicable here, provides that no deduction or credit shall be allowed under section 162 for any traveling expense (including meals and lodging while away from home), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (A) The amount of such expense, (B) the time and place of the travel, and (C) the business purpose of the expense. Petitioner has met the latter two requirements; he has failed to prove the amount of the expense. The regulations offer further clarification: To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section. * * * [Sec. 1.274-5(c)(2)(i), Income Tax Regs.]
Section 274(d) also provides: "The Secretary may by regulations provide that some *354 or all of the requirements * * * shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations." Under the regulations issued pursuant to this authority, the Commissioner may prescribe rules under which employee reimbursement arrangements and per diem allowances for expenses of traveling away from home will be regarded as equivalent to substantiation by adequate records, or will be deemed substantiated. Sec. 1.274-5(f), Income Tax Regs.; see Murphy v. Commissioner, T.C. Memo. 1993-292. Section 1.274-5(h), Income Tax Regs., states in part: "The Commissioner may establish a method under which a taxpayer may elect to use a specified amount or amounts for meals while traveling in lieu of substantiating the actual cost of meals." The same provision is found in section 1.274-5T(j), Temporary Income Tax Regs., 50 Fed. Reg. 46006, 46032 (Nov. 6, 1985), for taxable years beginning on or after January 1, 1986. Rev. Proc. 83-71, supra provides a method by which self-employed individuals may elect to deduct a specific amount per day for *355 meals while traveling away from home in the pursuit of a trade or business instead of substantiating the actual cost of each meal. The purpose of the revenue procedure is to relieve taxpayers of the burden of keeping records of the amount of each expenditure for meals otherwise required by section 1.274-5, Income Tax Regs. Under the revenue procedure the amount is $ 14 per day for trips less than 30 days and $ 9 per day for trips 30 or more days. Respondent determined that petitioner established the time, place, and business purpose of his travel and is deemed to have substantiated business travel expense deductions calculated at the rate of $ 9 per travel day for himself and $ 14 per day for Amy P. Hoag without producing additional records or documentary evidence. Respondent's determination is presumed correct, and petitioner bears the burden of showing that he is entitled to business expense deductions for travel expenses in an amount greater than that allowed by respondent. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioner argues that the amount of his travel expense deemed substantiated should be calculated *356 at the rate set for Federal employees on travel status. Petitioner cites no authority whatsoever for this proposition. Petitioner has been given the benefit of the revenue procedure in view of his complete failure to present adequate records or sufficient evidence to substantiate travel expenses in excess of the amount allowed by respondent. Petitioner complained during the course of this trial that respondent refused to show him the applicable law. We made it clear to petitioner that the law was very specific, that section 274 provides that without substantiation a taxpayer is not entitled to deduct any travel expenses. The Commissioner, pursuant to the authority given under the statute, has chosen to alleviate the record-keeping burden by allowing a flat rate for meal expenses. It is apparent that petitioner knew he was required to substantiate his costs. He testified, "I started to collect receipts and so on and so forth, and it got to be a horrendous task. And to be very honest with you, I got so confused and tired with the whole thing that I just gave it up." It was petitioner's option to give up collecting records for substantiation, but he must bear the inherent cost *357 in so doing by not being entitled to travel expense deductions any greater than those allowed by respondent. Farm expenses. Petitioner and Amy P. Hoag during the years 1986, 1987, and 1988 resided on 3 acres of land in Seguin, Texas. They purchased this land in 1983. During that year, petitioner planted a number of fruit trees on the three acres. During 1988, petitioner had approximately 23 peach, 16 plum, 10 pecan, 6 apricot, 6 pear, 2 persimmon, 5 nectarine, and some fig and pine trees planted on the Seguin land. Also during 1988, petitioner had approximately 34 hens, 2 roosters, and a number of ducks on the land. On Schedule F of the 1988 return petitioner reported $ 63 of gross receipts, which consisted of $ 38 from sale of eggs and $ 25 from the sale of peaches. A loss from farm operations in the amount of $ 1,936 was claimed. Respondent disallowed the loss on the ground that the farm activity was not entered into for profit. Section 183 controls here. Subsection (a) states that where an individual engages in an activity and "such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided *358 in this section." In this regard, subsection (b) allows: (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).
Lastly, subsection (c) provides a definition of an activity not engaged in for profit; "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212" means one not engaged in for profit. For petitioner to prevail here, he must demonstrate that he engaged in the farm activity for profit. Rule 142(a); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The appropriate inquiry is whether the taxpayer had an actual and honest objective *359 of making a profit. Dreicer v. Commissioner, 78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). To make this determination we examine all the surrounding facts and circumstances and consider the nine factors enumerated in section 1.183-2(b), Income Tax Regs.Stephens v. Commissioner, T.C. Memo. 1990-376; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Dreicer v. Commissioner, supra.Greater weight is to be given to the objective facts rather than to the taxpayer's statement of intent. Thomas v. Commissioner, supra; Seaman v. Commissioner, 84 T.C. 564 (1985); sec. 1.183-2(a), Income Tax Regs.
The nine factors are as follows: (1) The manner in which the taxpayer carried on the activity, (2) the expertise of the taxpayer or his advisors, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that an asset used in the activity may *360 appreciate in value, (5) the success of the taxpayer in previously carrying on the same or similar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, that are earned, (8) the financial status of the taxpayer, and (9) the elements of personal pleasure or recreation enjoyed by the taxpayer from his involvement in the activity. In this case, the petitioner did not maintain separate books and records in regard to the farm activity. Since he had only 3 acres to his farm, a separate set of books would not appear to be a necessity. Further, substantiation about the farm expenses is not here in issue. Petitioner was knowledgeable about farming. He had previously owned a citrus grove in south Texas for 8 or 9 years. He had 10 acres of mixed citrus, early oranges, Ruby Red grapefruit, and late oranges. He had 57 rows of inter-planted citrus trees. When he moved to Seguin, petitioner hoped that he would achieve some income from the 3 acres for his retirement years. He consulted with county extension agents in regard to the fruit trees and planted kiwi vines on the advice of an agriculture professor at *361 Texas A & M. It was subsequently discovered that kiwi did not do well in that part of Texas. He also had difficulty with several of the other trees he planted. His pear trees succumbed to some sort of rot, and it became necessary for petitioner to remove them and to sterilize the soil. When it turned out that some trees did not bear well, he changed to another variety. For instance, he originally planted Delta Queen peaches and then substituted July Albertas for them. He changed his method of cultivating in an effort to improve his production. He added whitewash to the trunks, and he wrapped the trunks of the younger trees. He changed his pruning methods in an attempt to enhance production. Petitioner's egg production was less than expected when his neighbor's tomcat killed some of his chickens and was further hurt when his dogs got into the coop and killed many more. Petitioner has never had a profit from the operation of the farm activity. It is obvious that he worked hard in his attempt to achieve profitability, and we note that it takes a fruit tree about 4 years to reach a viable crop for the market. It is also worthy of note that the trees were planted off to the *362 side of petitioner's house; they were not planted for shade or ornamental purposes. We view petitioner's farm activity in order to ascertain whether he had an expectation that he would realize profit from it. It is clear that this expectation need only be bona fide and not reasonable. See Stephens v. Commissioner, supra; Fox v. Commissioner, 80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinions sub nom. Hook v. Commissioner, Kratsa v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner, 734 F.2d 5, 6-7, 9 (3d Cir. 1984), Dreicer v. Commissioner, supra at 644-45. When we consider the various factors set forth by section 1.183-2(a), Income Tax Regs., each of these factors weighed together leads us to conclude petitioner had a bona fide profit objective with respect to the farm. See Trafficante v. Commissioner, T.C. Memo. 1990-353; *363 Yancy v. Commissioner, T.C. Memo. 1984-431. While other factors do not militate in favor of petitioner -- he did not succeed in his farming activities and has suffered several years of losses without ever having profited from the farm -- neither do they necessarily tend to establish a lack of profit motive. We make an overall determination based on all the facts and circumstances before us. Lemmen v. Commissioner, 77 T.C. 1326 (1981); Trafficante v. Commissioner, supra; sec. 1.183-2(b), Income Tax Regs. Petitioner had an actual and honest objective of making a profit. Accordingly, he engaged in the farm activity for profit, and the losses so incurred are deductible. To give effect to this opinion and to concessions made, Decision will be entered pursuant to Rule 155. Footnotes
1. Section references are to the Internal Revenue Code in effect for the year at issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩